# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LEE W. MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04 C 7808 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| | ) | |
| ELKAY MANUFACTURING COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lee W. Mitchell sued his former employer, Elkay Manufacturing Company ("Elkay"), alleging two counts of retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* Elkay has moved for summary judgment on both counts. For the reasons that follow, Elkay's motion is granted and the case is dismissed.

### BACKGROUND

Mitchell worked for Elkay as a bowl maker at its facility in Broadview, Illinois from January 2000 until his termination on April 22, 2005. The bowl maker job is a multi-function job consisting of operating a press that draws the bowls, putting the hole in the bowls, operating the furnace, and operating the coil line that cuts the steel to make the bowls. Except for a special class of employees called the "red circle persons" who worked exclusively on only one of the line jobs, the bowl maker employees are rotated through each of the lines on a random schedule and work one of the line jobs on a given day.

On October 20, 2003, Mitchell experienced some swelling in his right arm and shoulder from a prior surgery and, when he told his supervisor about it, was told to go see the company nurse. The

nurse was not available so Mitchell went home and later received a call from the nurse and Senior Human Resources generalist Renee McCline[1] telling him he was not allowed to come back to work without a "full duty" doctor's release. Mitchell saw his doctor, Charles Bush Joseph, M.D., on October 24, 2003, who gave him a note stating that he "may work with restriction of no bowl maker job, no lifting from ground to shldr. level. FCE pending." In a letter to Elkay concerning Mitchell's October 24, 2003 visit, Dr. Joseph explained:

> At this point, Lee continues to have recurrent episodes of anterior and superior shoulder pain which are exacerbated with certain types of work activities. Unfortunately, there is little more we can offer him in terms of medical and orthopaedic treatment and I believe that a functional capacity evaluation is warranted. At this point, it is safe to allow him to return to work with restrictions in the interval. This would include no bowl-maker job position which requires lifting from ground to shoulder level greater than 20-25 pounds.

On October 25, 2003, Mitchell returned to work, gave McCline the note, and was told by McCline that he could not return to work without a "full duty" doctor release. As a result, Mitchell was approved for short term disability benefits from October 21, 2003 through December 14, 2003 and was absent for the remainder of 2003. Mitchell's doctor released him to work "full duty," with no restrictions, on January 13, 2004.

On January 26, 2004, Mitchell was at work when he started feeling nausea, dizziness, and chest and stomach pains. Mitchell told his supervisor he was going home because he was experiencing complications from blood pressure medication and his supervisor asked if he should call an ambulance. Mitchell declined, sat in the office for a little while, and then went home. Mitchell was off the next day, and when he returned to work the following day his supervisor told him he needed a doctor's note in order to return to work.

---

[1] McCline was promoted to HR manager in November 2004.

Mitchell went to his doctor's office on January 29, 2004. Mitchell's doctor gave him a note which read: "Please excuse Mr. Mitchell for 1/26-1/27 he was having side effects from his blood pressure medication. He was able to work on 1/28. Please call with any questions." Mitchell returned to work on January 29, 2004.

In late 2004, Elkay began an investigation into another employee, Ronell Ferguson, whom Elkay believed had falsely claimed insurance coverage for a purported spouse when he was not married. During that investigation, claims were made about other employees – including plaintiff, Jerry Jones, Norman Burton and Dennis Epps – fraudulently obtaining insurance coverage for girlfriends. Elkay's investigation consisted of contacting a third party to conduct a background check to see if there were records of the four employees' marriages, and auditing its own records in the HR department. As a result of the investigation, Elkay terminated Ferguson's employment[2] for failing to provide proof of his marriage after falsely electing insurance coverage for a spouse. Jones provided proof of his marriage. Burton and Epps were not married but a review of their insurance records revealed that neither claimed coverage for a spouse.

On April 20, 2005, Mitchell was informed in a letter that he was required to provide proof of his marriage to Rosalind Mitchell, whom he claimed was his spouse under the Elkay Health Care Benefits Plan, before April 22, 2005. The letter also stated that he would be discharged if he failed to comply with Elkay's directive. Mitchell told McCline that he could bring the proof back that day. Mitchell went home and retrieved a glass frame that contained a picture of him and Rosalind and a piece of paper showing he was married to Rosalind. He returned to work, met with McCline, and

---

[2] After Ferguson filed a grievance and proceeded to an arbitration under the collective bargaining agreement, an arbitrator reinstated Ferguson to his position, and converted his termination to a long-term suspension without pay.

3

read out loud the handwritten date – "2001" – that was on the picture. Mitchell told McCline, "I'm not giving you any copies. It belongs to me and my wife. It's our personal property. You are not getting any copies." McCline never got to hold or see the date on the framed document Mitchell presented and when McCline told Mitchell that she needed a copy, he refused to provide one.

On April 21, 2005, McCline delivered a letter to Mitchell acknowledging the framed document he had brought to her office the day before, but notifying him that he still needed to provide a certified copy of his marriage certificate by April 22, 2005 or face immediate discharge. Mitchell never provided a certified copy of his marriage certificate to Elkay. As a result, Mitchell's employment was terminated effective April 22, 2005.

Mitchell married Rosalind in Nevada on April 16, 2005. Mitchell had claimed Rosalind as his spouse for obtaining dependent coverage under Elkay's group health plan since the day he began his employment in 2000.

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.* at 249. The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).

4

In his first retaliation claim, Mitchell argues that Elkay denied him the "opportunity to work, including overtime" (Second Am. Compl. at ¶ 25) in retaliation for his having filed charges with the Equal Employment Opportunity Commission ("EEOC"). Specifically, Mitchell alleges that Elkay refused to allow him to return to work in October 2003 and January 2004 without a doctor's note because he had previously filed charges with the EEOC. In his second retaliation claim, Mitchell maintains that Elkay terminated him because he filed a charge with the EEOC and the instant lawsuit.

**Retaliation Claims Via Direct Method of Proof**

Mitchell argues that his claims survive under both the direct and indirect method of proof. Under the direct method, a plaintiff must establish a *prima facie* case by presenting evidence that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two. *Luckie v. Ameritech Corp.* 389 F.3d 708, 714 (7th Cir. 2004). A plaintiff proceeding according to the direct method of proof may rely on two types of evidence: direct evidence or circumstantial evidence. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005).

"Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Id.* (quoting *Eiland v. Trinity Hosp.*, 150 F.3d 747, 751 (7th Cir. 1998)). In other words, there must be a statement, admission or smoking gun that shows that retaliation had a part in the alleged adverse actions. *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). Here, Mitchell has not presented any direct evidence, instead attempting to provide enough circumstantial evidence to meet his burden. Discrimination can be proved circumstantially through "ambiguous statements, suspicious timing, discrimination

against other employees, and other pieces of evidence none conclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994); *see e.g. Volovsek v. Wisc. Dep't of Agric., Trade and Consumer Prot.*, 344 F.3d 680 (7th Cir. 2003) (holding that overheard "barefoot and pregnant" comment, having occurred just after plaintiff was informed she did not get promotion, was circumstantial evidence of intentional discrimination); *Rudin*, 420 F.3d at 720 (holding that Caucasian plaintiff presented sufficient circumstantial evidence via the direct method of proof where African-American applicant was permitted to skip over screening phase and one of the decision-makers admitted he was under pressure to hire a minority candidate). Circumstantial evidence also includes evidence of similarly situated individuals not in plaintiff's protected class who received preferential treatment, or evidence that the employer's stated reason for its action was "unworthy of belief." *Troupe*, 20 F.3d at 736.

While a plaintiff may rely on circumstantial evidence under the direct method of proof, such evidence "must point directly to a discriminatory reason for the employer's action." *Mason v. Fort Wayne Foundry Corp.*, No. 1:05-DV-159-TS, 2006 WL 1408416, at *4 (N.D. Ind. May 22, 2006) (quoting *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 832 (7th Cir. 2005)). In order to meet his burden, Mitchell's evidence must *directly* show that he would have been allowed to return to work in October 2003 and January 2004 if he had not filed previous EEOC charges and everything else had been the same. *See Troupe*, 20 F.3d at 738. Similarly, with respect to claim II, Mitchell must show that he would not have been terminated if he had not filed previous EEOC charges and the instant lawsuit.

Mitchell fails to meet his burden under the direct method of proof for both retaliation claims

because he has failed to show a "convincing mosaic" of retaliation. With respect to the October 2003 incident in which Elkay refused to allow Mitchell to return to work without a "full duty" release, Mitchell argues that "[t]he close proximity between Plaintiff's participation in a statutorily protected activity and Defendant's conduct illustrates suspicious timing, which points to a causal connection." Approximately three and a half months elapsed between the October 2003 incident and Mitchell's most recent EEOC charge on July 8, 2003. The Seventh Circuit has stated that temporal proximity, standing alone, is almost always insufficient to show a "causal connection." *Stone v. City of Indianapolis*, 281 F.3d 640, 644 (7th Cir. 2002) (mere temporal proximity will rarely be sufficient in and of itself to create a triable issue).

However, "[c]lose temporal proximity provides evidence of causation and may permit a plaintiff to survive summary judgment provided there is other evidence that supports the inference of a causal link." *Lang v. Ill. Dep't of Children and Family Serv.*, 361 F.3d 416, 419 (7th Cir. 2004). In an apparent attempt to show "other evidence," Mitchell asserts that, in 2002, prior to the filing of his EEOC charges, Elkay allowed him to work exclusively as a coil line operator, even though his doctor placed similar restrictions on his work duties. While this argument would certainly be helpful to Mitchell if he could show that, prior to his protected activity, Elkay allowed him to work solely as a coil line operator, Mitchell has failed to provide the necessary supporting evidence. In his deposition, Mitchell stated that in January 2002 his doctor put him on "light duty" and he worked *overtime* "on the coil line." He also included an unauthenticated and unsigned copy of a "Work Status Report" from Midwest Orthopedics (dated 5/14/02) stating that Mitchell "may lift/push/pull no more than 30 lbs. frequently (up to 66% or up to 240x/hr) with the right arm" and "is unable to perform above shoulder work with the right arm." Without an explanation of what the coil line

7

position requires of the operator, these facts are meaningless. In the end, the court is left with too many unanswered questions: (1) does the coil line operator position (or any of the other three bowl making component positions) fit within the Work Status Report's restrictions; (2) what type of work did Mitchell perform during his regular work day; and (3) was Mitchell circumventing his doctor's restrictions by working overtime as a coil line operator? The court is simply unable to conclude, based on the evidence presented, that Elkay treated Mitchell more favorably prior to his filing EEOC charges.

The evidence supporting the January 2004 incident is likewise insufficient. Here, Mitchell argues that the "causal link" requirement is met because HR manager McCline, and not the company nurse, made the decision to require a doctor's note. Even if true, this evidence does not support the conclusion that but for Mitchell's protected activity, he would have been allowed to return to work absent a doctor's note. Mitchell's argument that Elkay failed to put forward evidence of other employees who were similarly treated is not persuasive, as it is Mitchell, and not Elkay, who must come forward with affirmative evidence to withstand Elkay's summary judgment motion. Further, he argues without support that Elkay had a policy of requiring a note only when an employee was absent for more than three days. In direct contradiction to this, Elkay has presented undisputed evidence that its written policy allowed it to require medical certification of an employee's fitness for duty prior to an employee's return from a medical absence in several circumstances, including when there is concern over the employee's medical ability to work safely.[3] Here, Mitchell

---

[3] Paragraph 3 of Elkay's attendance policy provides that "[t]he Company, in its sole discretion, will always require medical certification of an employee's fitness for duty prior to the employee's return from a medical absence. The circumstances in which medical certification may be required include . . . concern over the employee's medical ability to work safely."

complained of nausea, dizziness and stomach and chest pain. Considering the fact that Mitchell was performing a job requiring the manipulation of heavy machinery, and his condition was such that his supervisor asked Mitchell whether he should call an ambulance, it is reasonable that the company would want a doctor to verify that Mitchell was well enough to return to work.

Finally, Mitchell's attempt to show a "causal link" between his discharge and his protected activity likewise fails. First, Mitchell argues that "only a few short months" elapsed between the filing of this lawsuit in December 2004 and his termination in April 2005. A lapse of four and a half months has been held to be insufficient to show the required causal link. *Filipovic v. K&R Express Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (four months negates causal inference). But even if four and a half months standing alone was sufficient to raise suspicion, those four and a half months were not uneventful – the company conducted an investigation into insurance fraud and determined that Mitchell and another employee had fraudulently claimed spousal health insurance coverage when they were not married. *Kodl v. Bd. of Educ., Sch. Dist. 45, Villa Park*, No. 05 C 3837, 2006 WL 2192014, at *16 (N.D. Ill. Aug. 1, 2006) (collecting cases where an intervening event broke the causal connection between the alleged "protected activity" and the termination).

In his brief, Mitchell argues that Elkay knew he was not married when he elected coverage for Rosalind, and that Elkay used information it already had known about for years in order to justify his termination. However, Mitchell's statement of additional facts is completely devoid of any evidence supporting this claim. The only evidence submitted by Mitchell indicates that he asked a member of the HR staff if he needed to provide proof of his marriage in order to elect insurance coverage for a spouse. The fact that Mitchell asked this question, and was informed that he need not provide proof, is not evidence that supports his position that he was fired because of his

protected activity. Indeed, this statement simply shows that Mitchell was able fraudulently to claim Rosalind as his spouse without providing proof of marriage. Accordingly, Mitchell's attempt to support his claims under the direct method of proof fails.

**Retaliation Claims Via Indirect Method of Proof**

Mitchell also argues that he has met his burden under the *McDonnell Douglas* indirect method of proof. Under the indirect or "burden-shifting" method, a plaintiff must establish that: (1) he engaged in statutorily protected activity; (2) he was performing his job according to his employer's legitimate expectations; (3) despite his satisfactory performance, he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Luckie*, 389 F.3d at 714. Mitchell's failure to establish any one prong of his *prima facie* case dooms his claim. *Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002).

If the plaintiff succeeds in proving his *prima facie* case, the employer must offer a legitimate, noninvidious reason for the adverse employment action. *Hilt-Dyson*, 282 F.3d at 465. Once the employer has done so, the burden of production shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretextual in nature. *Id*. Elkay argues that Mitchell's claim fails because he has not pointed to any similarly situated employees who did not file EEOC charges and were treated more favorably.

Employees are similarly situated when they have "the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) (quoting *Radue v. Kimberly-Clark Corp.,*

219 F.3d 612, 618 (7th Cir. 2000)). "Courts should apply a 'common sense' factual inquiry – essentially, are there enough common features between the individuals to allow a meaningful comparison?" *Id.* Mitchell attempts to meet his burden on this element by pointing to a group of Elkay employees known as the "red circle persons," who are, pursuant to an allowance under the collective bargaining agreement, permitted to perform one step of the multi-function bowl making position. Mitchell argues that, despite his doctor's restriction of "no bowl maker job," Elkay should have allowed him to return to work limited to the coil line operator position. He points to the "red circle persons" as a group of workers who were permitted to perform only one of the four component jobs of the bowl maker position.

This argument fails for a number of reasons, not the least of which is the fact that Mitchell has presented virtually no meaningful evidence on these supposed comparators. There is absolutely no evidence on the critical fact of whether or not any of these employees engaged in protected activity. Equally problematic for Mitchell is the fact that, by definition, the "red circle persons" do not share the same job as Mitchell. According to the collective bargaining agreement, in order to be a "red circle person" and perform only one of the four bowl making components, an Elkay employee must have been employed by the company since 1996. It is undisputed that Mitchell was hired after that date and was thus required to perform all four component positions. Mitchell has not pointed to any employee, hired after 1996, who was allowed to work as a "red circle person" while on a doctor-imposed work restriction. Mitchell has failed to present evidence of any specific individual who could be considered similarly situated to Mitchell.

With respect to the January 2004 incident, Mitchell has failed to identify any similarly situated employee who did not file an EEOC charge, who exhibited nausea, dizziness and stomach

11

and chest pain (or similar combination of medical issues), and was not required to provide a doctor's note to return to work. Finally, Mitchell has not identified any employee who engaged in the same fraudulent behavior, did not file an EEOC charge and lawsuit, and was not terminated. In fact, the evidence shows that Elkay also terminated Ferguson, the only other employee it discovered had claimed coverage for a purported spouse when he was not in fact married. The fact that an arbitrator later reinstated Ferguson to his position does not change the analysis of Elkay's conduct.[4] When faced with two employees who committed the same fraud, Elkay treated them identically. In the end, Mitchell has failed to show any similarly situated employees who did not engage in protected activity and received more favorable treatment. For this reason, his claims fail under the indirect method of proof.

## CONCLUSION

For all the foregoing reasons, Elkay's motion for summary judgment is granted. The case is dismissed.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 9, 2007

---

[4] Unlike Ferguson, Mitchell's grievance was denied because it was not timely filed in accordance with the grievance procedure of the collective bargaining agreement. In ordering that Ferguson be reinstated, the arbitrator required financial restitution on his part. Such a resolution is not available in this context.